STEVENS *v.* NAVIGAZIONE GENERALE ITALIANA.

*(District Court, E. D. New York.* August 10, 1889.)

1. SHIPPING—DAMAGE TO FREIGHT.
   A bill of lading exempting the vessel owners from liability for "damage done by vermin" does not exonerate them from responsibility for injuries by rats, resulting from their negligence in omitting to fumigate the ship before loading, and the burden of proving that the injuries were not the result of such negligence is on the owners.

2. SAME.
   Nor will a further clause, exempting the owners from liability for any fault of the officers or crew in the management of the ship, relieve them, as only mismanagement while the goods are on board is intended to be covered thereby, and not negligence occurring before the freight is placed in the custody of the master and mariners.

3. SAME—RESHIPMENT.
   It is immaterial that the bill of lading was executed before the neglect to fumigate the ship occurred, or that it was executed upon the delivery of the goods to a vessel other than the one in which the damage occurred; it being contemplated by the bill of lading that the goods should be transhipped in a different vessel from that in which the voyage began.

In Admiralty.    Libel for damages.
*Julian B. Shope,* (*Chas. Stewart Davison,* of counsel,) for libelant.
*Ullo, Ruebsamen & Hubbe,* (*Lorenzo Ullo,* of counsel,) for respondent.

BENEDICT, J.    This is an action brought against the owners of the Italian steam-ship Independente to recover for damage caused by rats to certain goods shipped in Shanghai, on board the steamer Gilsland, for transportation to New York.    According to provisions in the bill of lading, the goods were transported in the Gilsland from Shanghai to Hong Kong. From Hong Kong they were transported to Palermo, in the kingdom of Italy; as is understood in some other steamer belonging to the respondents.    At Palermo the goods were reshipped on the steamer Independente, owned by the respondents, and in her transported to New York.    Upon delivery in New York, or shortly thereafter, the goods were found to be damaged by rats, and also by sea-water.    It is the damage by rats alone which is involved in this case, the other damage having been paid by the underwriters.

There is no direct proof in the case to show when the damage by rats occurred, but, inasmuch as the bill of lading given in Shanghai described the goods as "shipped in good order," the presumption is that the damage occurred on the Independente during the voyage from Palermo to New York.    The question in the case is whether, under the bill of lading sued on, the owners of the Independente are liable for damage by rats occurring on her voyage from Palermo to New York.    Several stipulations in the bill of lading are relied upon by the respondents as exempting them from liability.    One of these stipulations is "damage by vermin excepted."    This exemption covers damage by rats.    But such an exception, as was decided by Mr. Justice BLATCHFORD in the case of *The*

*Isabella*, 8 Ben. 139, does not avail to relieve the ship-owner in a case where, as is the fact here, "no evidence is given to show any care or precaution taken to guard against damage by rats." According to the decision referred to, and which should be followed here, the fact of damage by rats is to be regarded as *prima facie* evidence of negligence, in the absence of any explanation or proof of care. The liability of the respondents for the damage in question is undoubted, therefore, unless they are relieved therefrom by another stipulation in the bill of lading, which is as follows: "Damage or loss   *   *   *   from any act, neglect, or default of the pilot, master, or mariners in the navigation or management of the ship   *   *   *   excepted." This is an express stipulation confined by its terms to liability for negligent acts or omissions on the part of the pilot, or of the master, or of the mariners of the ship, occurring in the navigation or management of the ship; and, as it seems to me, by necessary implication confined to acts or omissions occurring while the goods are on board the ship, where they are, in a certain sense, in the custody or under the control of the master, pilot, and mariners of the ship. It cannot, in my opinion, be held to exempt the ship-owners from negligent acts or omissions which, although they may affect goods thereafter shipped, occur before the goods are by shipment placed in the custody of the master, pilot, or mariners of the ship. If this be the proper understanding of the exception in question, it has no effect to relieve the ship-owners from liability for the neglect which caused the damage in question, namely, the neglect to fumigate the ship; for fumigation must always be performed prior to the shipment of cargo.

In the case of *Steel* v. *Steam-Ship Co.*, L. R. 3 App. Cas. 72, a clause similar in many respects to the one under consideration was held by the English courts ineffective to exempt the ship for neglect occurring prior to the execution of the bill of lading, and the principle of the decision seems applicable to the present case, although this bill of lading was signed in Shanghai, and the neglect to fumigate the Independente occurred subsequently in Palermo; for the bill of lading contemplated a reshipment of the goods at Palermo into a different ship from that in which they were shipped in Shanghai, and for a distinct voyage. The contract provided for several distinct voyages in different ships, and, although a single bill of lading was issued, the legal effect, so far as the exceptive clauses are concerned, is the same as if a separate bill of lading had been issued upon each shipment of the goods upon a different ship for a different voyage. My conclusion, therefore, is that, notwithstanding the exceptions in the bill of lading, the respondent is liable for the damage by rats discovered upon the landing of the goods from the Independente in New York. In arriving at this conclusion I have not considered the effect of the Italian law. The bill of lading states that all "general averages arising on the voyage are to be settled at Genoa." This clause has not been insisted upon in the brief, doubtless for the reason that the goods never went to Genoa; that so far as appears none of the parties reside in Genoa; that Genoa was not touched at in any of the voyages; that the clause is limited in terms to "general averages;" and that

there is no proof given to show that the Italian law differs from our law. The law governing this contract I have supposed to be the law of England, as the contract was made in Shanghai, a port conceded in this case to be a port subject for the purposes of commerce and navigation to English law; and the law of England applicable to the case is deemed similar to the law of the United States, with the single exception proved, namely, that the law of the British Empire permits carriers to exempt themselves by express contract from responsibility for losses occasioned by the negligence of their servants,—an exception not important under the construction here given to the contract.

The further point was made at the trial, but not in the brief, that the damage in question might have been caused in a warehouse in Hong Kong, where, according to the bill of lading, the ship had liberty to land and store the goods at shippers' risk, to await the arrival there of the first available connecting steamer. As to this it is sufficient to say that, for all that appears, the goods may have been transhipped directly to a connecting steamer at Hong Kong, without going into warehouse. If the goods were put in store at Hong Kong, it was incumbent on the claimant to prove it. I observe in the brief the point made that the damage in question was not discovered until some days after the goods had been landed from the ship in New York, and that, inasmuch as rats may have eaten the bales after they were discharged, proof that the goods were damaged by rats when landed is necessary before the libelant can recover. This point did not attract my attention at the trial, and, as the respondent is of course not liable for rat damage done after delivery, leave is given to either party to take proofs upon the reference as to the existence of rat damage when the goods were delivered, and the damage reported will be limited to damage by rats appearing to have occurred prior to the delivery of the goods in New York.

The conclusion I have arrived at renders it unnecessary to consider the interesting proposition argued in behalf of the libelants, that an exception such as this bill of lading contains, being held by the courts of the United States to be contrary to public policy, should never be enforced by the courts of the United States upon grounds of comity, because comity yields when the law of the foreign state conflicts with a rule of the forum based upon public policy. Let a decree be entered in favor of the libelant, with an order of reference to ascertain the amount of damage by rats to the libelant's goods.